CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. RICHARD MITCHELL ET AL.

FILED OCTOBER 5, 1905.  No. 13,874.

1. **Petition** examined, and *held* to definitely state a good cause of action.

2. **Evidence** examined, and *held* sufficient to support the judgment of the trial court.

3. **Limitation of Actions**: EMBANKMENTS: WATERS. Where an injury to the crops and lands of one is caused by the negligent construction of a railroad embankment, which arrested and held upon said lands the flood waters of a natural stream, such party's cause of action accrues at the date of the injury, and not at the date of the negligent construction of the improvement. *Chicago, B. & Q. R. Co. v. Emmert*, 53 Neb. 237, followed and approved.

4. **Instructions** examined and approved.

5. **Harmless Error.** Action of the trial court in admission of evidence examined, and *held* not prejudicial.

ERROR to the district court for Richardson county: JOHN S. STULL, JUDGE. *Affirmed.*

*Francis Martin, J. W. Deweese* and *Frank E. Bishop*, for plaintiff in error.

*E. Falloon* and *A. J. Weaver, contra.*

OLDHAM, C.

This was an action for damages for injuries to growing crops on about 60 acres of land owned by the plaintiffs out of the E. ½ of the N. W. ¼ and the W. ½ of the N. E. ¼ of section 11, township 2, range 13 east, in Richardson county, Nebraska, which damages were alleged to have been occasioned by the negligent construction of a ditch along defendant's right of way, which diverted the waters from their natural channel in the Nemaha river, and discharged the same upon plaintiffs' land to the injury of the growing crops thereon, in the years, 1893, 1895 and 1896. Defendant's line of railroad runs through the above mentioned section from a point a short distance south of the northwest corner of the section, in a southeasterly direction, and traverses a small portion of the southwest corner of plaintiffs' land. Near the point of entrance of the railroad upon section 11, it crosses the Nemaha river, which, at the point of intersection, flows eastward in a meandering channel to a point near the eastern boundary of plaintiffs' land. From this point it meanders in a southwesterly direction through plaintiffs' land and crosses the line of the defendant's right of way eight or ten rods south of the plaintiffs' land. Accordingly, this land and a portion of other lands are inclosed in an irregular triangle by defendant's right of way and the bend of the river. When the defendant's railroad was constructed in the year 1872, a ditch or borrow-pit was dug on the east side of the right of way from the bank of the Nemaha river along the right of way for a distance of about 200 feet. This ditch, according to the testimony offered by the plaintiffs, was about 4 feet deep and 15 feet wide at the mar-

gin of the river, and was excavated for the purpose of procuring dirt for filling the railroad track, and not for purposes of drainage. The petition alleges that this ditch diverted the waters of the Nemaha river from their natural course, and discharged them on the portion of plaintiffs' lands lying immediately east of defendant's right of way, to the injury of their crops in the years above mentioned. Defendant's answer was, in substance, a general denial, and on issues thus joined there was a trial to a jury, a verdict for the plaintiffs for $200, and judgment on the verdict. To reverse this judgment defendant brings error to this court.

The first question called to our attention in the brief of the railroad company is that the court erred in over ruling a motion to require plaintiffs to make their amended petition more definite and certain, in stating wherein the defendant had negligently constructed its roadbed. We think this motion without merit. The petition alleged that the defendant in construction of its roadbed dug a ditch 4 feet deep and 15 feet wide into the bank of the Nemaha river, excavated it back along its right of way in such a manner as to divert the waters which would naturally flow, if unimpeded, in the channel of the river into the ditch, and by this means discharged these waters onto plaintiffs' land. There is no complaint in the petition that defendant failed to make a good and substantial roadbed, but that in doing so it diverted the waters of the Nemaha river from their natural flow to the plaintiffs' damage.

The next question urged is that the evidence is not sufficient to sustain the judgment. A review of the testimony offered by the plaintiffs shows that numerous witnesses sworn in their behalf testify that they saw the water flowing down from the river through defendant's ditch, and flowing from the mouth of the ditch to and over the submerged land of the plaintiffs in the years in which the injury is alleged to have been received. There was evidence, however, that in times of high water the river

would overflow at points surrounding plaintiffs' land below the point of the diversion by defendant's ditch, but the evidence offered by plaintiffs was confined to the years in which there was not a general overflow of the river. Defendant offered the testimony of an experienced civil engineer who made a thorough survey of the ditch or borrow-pit and the banks of the river which meandered plaintiffs' land in the year 1900. From this survey it appeared that the ditch at the bank of the river was several inches higher than the lowest point in the river bank below the ditch and adjacent to plaintiffs' land. From this testimony, which was undisputed, it is urged that the ditch could not have been the proximate cause of the injury to the crops. There would be much weight in this contention, had the survey been made at the time of the injury complained of; but the evidence shows, on the plaintiffs' part, that the ditch had been filled at least two feet after the injury and before the survey was made. Consequently, the question as to whether the injury was occasioned by the ditch or by the natural overflow of the river was one of fact for the determination of the jury.

It is next urged that, because the testimony shows that the borrow-pit or ditch complained of was constructed more than ten years before the injury complained of, the action was barred by the statute of limitations. In support of this contention we are cited to the decision of this court in *Gartner v. Chicago, R. I. & P. R. Co.*, 71 Neb. 444. In that case the second cause of action reviewed in the opinion was for injuries to land alleged to have resulted from the negligent construction of defendant's roadbed, whereby surface water was thrown back and over the lands. As a defense to this cause of action, the company pleaded a judgment rendered in favor of the former owner of the premises and against it on a similar cause of action. It was held that the former judgment was for damages to the land, both present and prospective, by reason of the construction of the roadbed, and was binding on the then plaintiff and his privies, the subsequent purchasers

of the land.   In the case at bar, no former judgment was pleaded or proved and the damages alleged were for injuries to the growing crops—not to the land—for the years named in the petition.   So that this case does not fall within the reason of the rule announced in *Gartner v. Chicago, R. I. & P. R. Co., supra.*   It is rather governed by the doctrine announced in *Chicago, B. & Q. R. Co. v. Emmert*, 53 Neb. 237, in which the court said:

"Where an injury to the crops and lands of one is caused by the negligent construction of a railway enbankment, which arrested and held upon said lands the flood waters of a natural stream, such party's cause of action accrues. at the date of the injury and not at the date of the negligent construction of the improvement." *Fremont, E. & M. V. R. Co. v. Harlin*, 50 Neb. 698.

Objection is urged against the action of the trial court in giving and refusing instructions.   The instructions, as a whole, clearly submitted to the jury the question to be determined, that is, whether or not the water of the Nemaha river was diverted from its natural channel by defendant's ditch, and discharged upon plaintiff's land, by reason of such diversion, when, but for such ditch, the water would have remained in its natural channel.   On an affirmative determination of this question from a preponderance of the evidence plaintiffs' right to recover was predicated.   The court gave every instruction requested by defendant except a peremptory one directing a verdict. The instructions given at defendant's request presented every defense offered as favorable to defendant's contention as the law would permit.   There is no material conflict in the instructions given at the request of the plaintiffs and those given at the request of the defendant.   We therefore conclude that the cause was fairly submitted and fully covered by the instructions given.

Complaint is urged against the action of the trial court in the admission of evidence on the measure of damages to the plaintiffs.   These objections are technical and specious, and are urged against the court allowing wit-

nesses to testify as to the productive powers and the character of the soil on the land alleged to have been overflowed.  The proposition to be established was: What was the value of the growing crops before and after the overflow?  This is a question that is always difficult to accurately determine, as the value of growing crops depends on the probability of their subsequent maturity.  It was well said in the case of *Wallace v. Goodall*, 18 N. H. 439:

"The value of young timber, like the value of a growing crop, may be but little when separated from the soil. The land stripped of its trees may be valueless.  The trees considered as timber may, from their youth, be valueless, and so the injury done to the plaintiff by the trespass would be but imperfectly compensated, unless he could receive a sum that would be equal to their value to him while standing upon the soil."

The court in his instructions fixed the measure of damages as "the difference in the fair market value of the crop just before the land was flooded, in the manner above alleged, if proved, and immediately thereafter."  This was the proper measure, and an examination of the whole record shows that the jury in their award administered only a homeopathic dose of damages in the treatment of the plaintiffs' injuries.  We are therefore convinced that defendant was not prejudiced in the admisssion of evidence on this branch of the case.

Finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons given in the above opinion, the judgment of the district court is

AFFIRMED.