C. E. V. SMITH, ADMINISTRATOR, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 6, 1909.  No. 15,493.

1. Waters: OBSTRUCTIONS BY RAILROAD.  A railway company in constructing its road filled in a ravine and substituted another way for flood waters that would otherwise pass down said watercourse. Subsequent to such construction it became apparent that the artificial watercourse did not have the same capacity as the natural one.  *Held*, That the railway company was bound to know that excessive rains might occur at any time and damage result as a consequence of the inadequate provisions made by it as foresaid.

2. ———: ———: LIABILITY OF LESSEES.  That a lessee of the original owner and builder of said road is also charged in law with notice of said conditions and liable for damages resulting from its failure to exercise reasonable diligence to protect adjacent landowners from the consequences of its neglect.

3. Appeal: INSTRUCTIONS.  A new trial will not be granted because instructions are somewhat confusing and contradictory, where they are favorable to the defeated litigant, and evidently did not mislead the jury.

APPEAL from the district court for Furnas County: ROBERT C. ORR, JUDGE.  *Affirmed*.

*J. E. Kelby, Halleck F. Rose, Frank E. Bishop, Byron Clark* and *Fred M. Deweese*, for appellant.

*J. F. Fults* and *E. B. Perry*, contra.

ROOT, J.

Appeal from a judgment on the verdict of a jury for damages.

Beaver creek flows east and west through sections 25 and 26, town 2, range 24, Furnas county. In 1887 the Oxford & Kansas Railroad Company constructed its railway east and west through said sections and about 40 rods north of said creek. The village of Wilsonville is situated on section 26 and principally north of the railway. A ravine runs south into Beaver creek about the west line of section 26, and one of like character is situated about the center of section 25. About the center of section 26, a smaller ravine runs south from about the north line of the railway right of way to said creek. In the construction of the railway, the last mentioned draw was filled in across the right of way. A ditch was then constructed north of and parallel with the railway so that the water that theretofore would pass down the draw in the center of said section was forced east or west for a considerable distance and discharged into the ravine west of said town or through a culvert about 600 feet east of the village. The water that passed through said culvert would spread over considerable territory and flow towards and into Beaver creek. About the time that the railway was constructed a water-power mill was built on Beaver creek southeast of Wilsonville. The testimony is undisputed that the provision made by the railway company for the drainage of the surface water that collected north of its railway was insufficient; that before said road was built the surface water did not cover the land south of the railway grade and north of the creek, but flowed into the ravines and draw described and thence continued into said stream. In July, 1905, after a heavy rain, the flood waters which accummulated north of the railway were held back and retained by said grade, and a considerable part thereof escaped through the opening east of Wilsonville and, controlled by the law of gravitation, flowed down toward and

against the corner of said mill, inflicting substantial damage thereto.

1. The first proposition advanced by defendant is that the proof does not establish that defendant had notice that the provisions for drainage at said point were insufficient, and therefore it was not liable for a nuisance which it did not construct. The contrary rule is announced in *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745. While the general rule as to landlord and tenant may be as suggested by counsel, and might apply to railway companies as to some nuisances, we do not think it should control in relation to those active duties which the law imposes on every railway company with relation to the construction and maintenance of its railway. Those duties concerning provision for the accommodation of flood waters are succinctly, and we believe correctly, set forth in *Morse v. Chicago, B. & Q. R. Co., supra; Dickson v. Chicago, R. I. & P. R. Co.*, 71 Mo. 575; *Clark v. Dyer*, 81 Tex. 339; *Brown v. Carolina C. R. Co.*, 83 N. Car. 128.

2. The court instructed the jury that the burden was on plaintiff to prove his damage; that the same resulted from defendant's negligence as set forth in the petition; that it was the duty of a railway company in constructing its roadbed across a ravine or other natural watercourse, so far as consistent with the safe and proper operation of its road, to provide for the discharge of such water as would naturally flow therein; that the original owner of the railway had the right to control and change the direction of surface water, and, if it did not negligently and unnecessarily make such change, it would not be liable, and that defendant was not liable for the original construction of said road; that defendant would not be liable for unprecedented and excessive rainfall, and that it was the duty of the village authorities to keep open the waterways outside of the right of way but within the corporate limits. The jury, after considering the case, requested further instruction, and were informed again that defendant was not liable for the acts of its predecessors, "but

any act by the defendant company which caused or contributed to damming up or changing the course of such surface water and which unnecessarily and negligently damaged the plaintiff, for such damage the defendant company would be liable." Counsel assert that this instruction made defendant liable, without reference to negligence, for any act on its part which contributed to the injury. The words "which unnecessarily and negligently damaged the plaintiff" so qualified the preceding language that the instruction is not open to the criticism made. The instructions, when considered in connection with each other, are as favorable to defendant as the law warrants.

3. It is argued that, if defendant provided for the passage of such flood waters as might reasonably be contemplated at the time the road was built, it was not guilty of negligence, and that the evidence does not affirmatively establish that such provisions were insufficient. The evidence upon this point is not as clear as a court might desire, but it does appear that a sewer pipe beneath the roadbed of the railway at a point between the old channel and the culvert east of the town had become filled up with dirt at the time of the flood so that the provisions originally made by the railway were not continued. The testimony further discloses that the railway grade holds back surface water north of the railway after rains so that a pond is formed which remains for a time; that before the construction of said grade such waters passed down the ravine which the railway filled up. A greater amount of water was thus held back in July, 1905, than after ordinary rains, and probably more than ever before in the history of the railway, but there were sufficient facts before defendant and its predecessors to warn and instruct them that they had not made provision for the usual and ordinary flow of the water at said point. Having knowledge of that fact, defendant and its predecessors were charged with further notice that unusual rains might occur and that the channel that did not suffice for ordi-

nary rains would be totally insufficient for excessive ones. A rainfall of two inches on each of two days, such as the evidence establishes occurred in the instant case, cannot be said to be excessive or so unusual that defendant ought not be have anticipated it. *Fairbury Brick Co. v. Chicago, R. I. & P. R. Co.*, 79 Neb. 854.

4. The objections concerning the admission of evidence need not be referred to in detail. We have considered all of them, and they do not entitle defendant to a reversal. There is not any substantial conflict in the evidence, nor any question but that the verdict is for a much smaller sum than the amount of plaintiff's damages.

The judgment of the district court, therefore, is

AFFIRMED.